## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

ANITA JAIRAM and KEVIN HILLOW,
individually and on behalf of all
others similarly situated,                                   CLASS ACTION

      Plaintiffs,                                   JURY TRIAL DEMANDED

v.

FLORIDA PANTHERS HOCKEY CLUB, LTD.,

      Defendant.
_____/

### CLASS ACTION COMPLAINT

Plaintiffs Anita Jairam and Kevin Hillow bring this class action against Defendant Florida Panthers Hockey Club, Ltd., and allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's violations of the TCPA.

2.      Defendant is a professional ice hockey team and a member of the National Hockey League.

3.      In an effort to boost attendance at its games, Defendant engages in deceptive and aggressive telemarketing.

4.      Specifically, Defendant lures consumers to provide their telephone numbers to it in exchange for promises of free gifts and/or coupons.  Once a consumer provides their telephone

number, Defendant automatically opts these unsuspecting consumers into its text messaging marketing campaigns. To make matters worse, Defendant provides consumers with no mechanism or instructions on how to opt-out of its aggressive text message spam.

5.     Such was the case here.  Plaintiffs believed they were providing their numbers to Defendant in connection with a specific promotion.  Defendant captured Plaintiffs' cellular telephone numbers, automatically opted them into its marketing campaigns, and relentlessly spammed Plaintiffs with solicitations about its games.

6.     Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiffs and Class Members, causing them injuries.

7.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

8.     Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a national class, which will result in at least one Class member belonging to a different state than Defendant.  Plaintiffs seek up to $1,500.00 in damages for each text message in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

9.     Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal

jurisdiction.  Further, Defendant's tortious conduct against Plaintiffs occurred within this district and, on information and belief, Defendant have sent the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

## PARTIES

10.     Plaintiff Jairam is a natural person who, at all times relevant to this action, was a citizen of and domiciled in Broward County, Florida.

11.     Plaintiff Hillow is a natural person who, at all times relevant to this action, was a citizen of and domiciled in Miami-Dade County, Florida.

12.     Defendant is a Florida limited partnership with a principal address of One Panther Parkway Sunrise, Florida 33323.  Defendant directs, markets, and provides substantial business activities in this District and throughout the State of Florida.

## THE TCPA

13.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

14.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

15.     The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

16.     In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded

voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

17.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

18.     A defendant must demonstrate that it obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

19.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

## FACTS PERTAINING TO PLAINTIFF HILLOW

20.     On or about October 22, 2019, Plaintiff Hillow texted the word "student" to Defendant for purposes of gaining free access to a rooftop lounge at one of Defendant's games.  Defendant provided Plaintiff Hillow with the promised free access.  However, Defendant went further by automatically opting Plaintiff Hillow into Defendant's text message marketing campaigns and aggressively spamming him with repeated marketing text messages.  To make matters worse, Defendant gave Plaintiff Hillow no option or instructions on how to opt-out of its spam text message campaigns.

21.     In a two-month period, Defendant sent Plaintiff Hillow close to thirty (30) text

messages, depicted below:























Sun, Dec 29, 12:01 PM

FLA Panthers: Last chance for Student Rush tix tonight vs Montreal! Tix are standing room only at The Library & include parking. Tix: http://mobn.it/Rxvw6y0

Price will increase periodically on a first come first serve basis. Click the ABOUT tab on the link for more info. Must purchase with valid .edu email address.

Fri, Jan 3, 6:12 PM

FLA Panthers: Welcome back from winter break! Get through the first week back to school and enjoy this extra special offer for $25 lower level tickets to 1/7 vs Arizona Coyotes and 1/9 vs Vancouver Canucks. Each ticket includes parking. The Library is closed for these games. Purchase using valid .edu email





22.     Defendant's tortious conduct against Plaintiff Hillow occurred in part within this district and, on information and belief, Defendant sent the same text messages complained of by Plaintiff Hillow to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

23.     At no point in time did Plaintiff Hillow provide Defendant with express written consent to be contacted by text message using an ATDS.

24.     Plaintiff Hillow is the sole user and/or subscriber of the cellular telephone number that was text messaged by Defendant.

25.     Defendant's unsolicited text messages caused Plaintiff Hillow actual harm. Specifically, Plaintiff Hillow estimates that he wasted at least 10 seconds reviewing each of Defendant's unwanted messages.  Each time, Plaintiff Hillow had to stop what he was doing to look down at his phone to review the message.

26.     Defendant's text messages took up memory on Plaintiff Hillow's cellular telephone, with each message taking up approximately 190 bytes.  The cumulative effect of unsolicited text messages, such as those complained of by Plaintiff Hillow herein, poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

27.     Defendant's text messages also caused the depletion of Plaintiff Hillow's cellular telephone battery. The battery used to power Plaintiff Hillow's cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff Hillow's cellular telephone.

### FACTS PERTAINING TO PLAINTIFF JAIRAM

28.     Like Plaintiff Hillow, Plaintiff Jairam provided her telephone number to Defendant for a limited purpose, and never affirmatively agreed or opted in to Defendant's marketing campaigns. Further, like Plaintiff Hillow, Plaintiff Jairam was given no instructions or mechanism by which to opt out of Defendant's marketing text messages.

29.     Defendant sent several text message communications to Plaintiff Jairam, including the following:





30.     Defendant's tortious conduct against Plaintiff Jairam occurred in part within this district and, on information and belief, Defendant sent the same text messages complained of by Plaintiff Jairam to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

31.     At no point in time did Plaintiff Jairam provide Defendant with express written consent to be contacted by text message using an ATDS.

32.     Plaintiff Jairam is the sole user and/or subscriber of the cellular telephone number that was text messaged by Defendant.

33.     Defendant's unsolicited text messages caused Plaintiff Jairam actual harm. Specifically, Plaintiff estimates that she wasted at least 10 seconds reviewing Defendant's unwanted messages.  Each time, Plaintiff Jairam had to stop what she was doing to look down at her phone to review the message.

34.     Defendant's text messages took up memory on Plaintiff Jairam's cellular telephone, with each message taking up approximately 190 bytes.  The cumulative effect of unsolicited text messages, such as those complained of by Plaintiff Jairam herein, poses a real risk of ultimately rendering the phone unusable for text messaging purposes as a result of the phone's memory being taken up.

35.     Defendant's text messages also caused the depletion of Plaintiff Jairam's cellular telephone battery. The battery used to power Plaintiff Jairam's cellular telephone can only be recharged a limited number of times before the battery's voltage begins to decrease, causing the cellular phone to turn off completely, without warning, if the battery drops below the minimum voltage needed to safely power Plaintiff Jairam's cellular telephone.

## FACTS COMMON TO BOTH PLAINTIFFS

36.     The number used by or on behalf of Defendant (64600) to transmit the above text messages to Plaintiffs is known as a "short code."  Short codes are short digit sequences, significantly shorter than telephone numbers, that are used to address messages in the Multimedia Messaging System and short message service systems of mobile network operators.

37.     Short codes cannot be used to transmit text messages from a traditional telephone.  Only computer systems can transmit text messages using a short-code.

38.     To send the text messages, Defendant used a web-based messaging platform hosted by Mobiniti (the "Mobiniti Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

39.     The Mobiniti Platform has the capacity to store telephone numbers.

40.     The Mobiniti Platform has the capacity to generate sequential numbers.

41.     The Mobiniti Platform has the capacity to dial numbers in sequential order.

42.     The Mobiniti Platform has the capacity to dial numbers from a list of numbers.

43.     The Mobiniti Platform has the capacity to dial numbers without human intervention. Specifically, the Mobiniti Platform has an "automations" function that operates by allowing a telemarketer like Defendant to transmit messages automatically based on certain triggers.  The transmission of a text message using the Mobiniti Platform's "automations" function occurs automatically, without human intervention, and solely based on pre-configured parameters that are executed by a computer with no human involvement at the time of execution, including the dialing of telephone numbers for the transmission of the messages.

44.     The Mobiniti Platform has the capacity to send "auto-responses," which consist of computer-generated text messages that are transmitted without any human intervention in response to

an incoming message.

45.     The Mobiniti Platform has the capacity to send "drip messages," which consist of computer-generated text messages that are, according to Mobiniti, "automatically" transmitted without any human intervention based on predetermined parameters.

46.     The Postscript Platform has a "scheduling" function that allows its users to schedule the future transmission of text messages based on certain consumer criteria (e.g. last date of purchase, and amount spent).

47.     To transmit the text messages at issue, the Mobiniti Platform automatically executed the following steps: [1] The Mobiniti Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed; [2] The Mobiniti Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content; [3] Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Mobiniti Platform, mobile carriers (e.g. AT&T), and consumers; and [4] Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant.  Each mobile carrier then sent the message to its customer's mobile telephone.

48.     The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously.  Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

49.     The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



**CLASS ALLEGATIONS**

<u>**P**ROPOSED **C**LASS</u>

50.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of themselves and all others similarly situated.

51.     Plaintiffs bring this case on behalf of the below defined Class:

> **[1]** All persons in the United States **[2]** within the four years immediately preceding the filing of this Complaint **[3]** whose cellular telephone number **[4]** was sent more than one text message **[5]** using the Mobiniti Platform **[6]** from Defendant or anyone on Defendant's behalf, **[7]** for the purpose of advertising or promoting Defendant's goods and/or services.

52.     Defendant and their employees or agents are excluded from the Class.

53.     Plaintiffs do not know the number of members in the Class but believe the Class members number in the several thousands, if not more.

<u>**N**UMEROSITY</u>

54.     Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express written consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

55.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of

ministerial determination from Defendant's call records.

<u>COMMON QUESTIONS OF LAW AND FACT</u>

56.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> (1)     Whether Defendant made non-emergency calls to Plaintiffs and Class members' cellular telephones using an ATDS;
>
> (2)     Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;
>
> (3)     Whether Defendant's conduct was knowing and willful;
>
> (4)     Whether Defendant is liable for damages, and the amount of such damages; and
>
> (5)     Whether Defendant should be enjoined from such conduct in the future.

57.     The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

<u>TYPICALITY</u>

58.     Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

<u>PROTECTING THE INTERESTS OF THE CLASS MEMBERS</u>

59.     Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class and have retained competent counsel. Accordingly, Plaintiffs are adequate representative and will fairly and adequately protect the interests of the Class.

#### SUPERIORITY

60.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

61.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### VIOLATIONS OF 47 U.S.C. § 227(b)
*On Behalf of Plaintiffs and the Class*

62.     Plaintiff re-alleges and incorporates paragraphs 1-61 as if fully set forth herein.

63.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

64.    The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

65.    Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiffs and the other members of the Class. These text messages were sent without regard to whether Defendant had first obtained express permission from the called party to send such text message. In fact, Defendant did not have prior express written consent to text the cell phones of Plaintiff or the other members of the putative Class when such text messages were sent.

66.    Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiffs and the other members of the putative Class without their prior express written consent.

67.    As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class are also entitled to an injunction against future calls.

68.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and members of the Class.

**WHEREFORE**, Plaintiffs requests that the Court enter judgment in favor of Plaintiffs and the Class, and against Defendant that provides the following relief: [1] Statutory

damages of $500 per violation, and up to $1,500 per violation if proven to be willful; [2] a permanent injunction prohibiting Defendant from violating the TCPA in the future through calling or texting cell phones using an automatic telephone dialing system; [3] a declaration that Defendant used an automatic telephone dialing system and violated the TCPA in using such to call or text the cell phones of Plaintiff and the Class; and [4] any other relief the Court finds just and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs demand that Defendant takes affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the text messages as alleged herein.

DATED: January 17, 2020

Respectfully Submitted,

**HIRALDO P.A.**

/s/ *Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
(t) 954.400.4713

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320